Chris LANGFORD, Curtis Langford
and Janice Gail Flowers,
Plaintiff,

v.

SANTA FE DRILLING COMPANY
and/or Santa Fe International
Corporation, Defendant.

No. 9:98–CV–242.

United States District Court,
E.D. Texas,
Lufkin Division.

May 18, 1999.

George Chandler, Chandler Law Offices, Lufkin, TX, for plaintiff.

James C. Winton, Baker & Hostetler, Houston, TX, for defendant.

## MEMORANDUM OPINION

COBB, District Judge.

Plaintiffs filed suit on behalf of Roger Langford, deceased, alleging that he died as a result of injuries sustained while employed by defendant Santa Fe International Corporation (plaintiffs allege specifically that Robert Langford died as a result of injuries incurred while fighting oil fires for defendants in Kuwait). Plaintiffs (all residents of Texas) allege that diversity jurisdiction is appropriate because defendant, although its executive headquarters are in Texas, is incorporated in the Cayman Islands and has its principal place of business in Egypt. Defendant, although it concedes that it is incorporated in the Caymans, denies that its principal place of business is Egypt. In fact, it alleges that its operations (mainly drilling) extend around the globe. Consequently, defendant maintains that it should be considered a citizen of Texas based on the location of its executive headquarters in Dallas. Defendant has filed a motion to dismiss asserting that diversity does not exist.

## ANALYSIS

Pursuant to 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." Santa Fe International Corporation is incorporated in the Cayman Islands and, consequently, qualifies as a citizen of the Cayman Islands. Santa Fe's principal place of business, considering that it is an international drilling corporation whose operations stretch around the world, however, is more difficult to establish.

In this Circuit, a "total activity" test is applied to determine a corporation's principal place of business. *Nauru Phosphate Royalties v. Drago Daic Interests,* 138 F.3d 160, 164 (5th Cir.1998); *J.A. Olson Co. v. City of Winona,* 818 F.2d 401, 411–12 (5th Cir.1987). The total activity test has three basic components:

(1) when considering a corporation whose operations are far flung, the sole nerve center of that corporation is more significant in determining principal place of business; (2) when a corporation has its sole operation in one state and executive offices in another, the place of activity is regarded as more significant; but (3) when the activity of a corporation is passive and the "brain" of the corporation is in another state, the situs of the corporation's brain is given greater significance.

*Nauru,* 138 F.3d at 164 *citing Olson,* 818 F.2d at 411. Defendant, emphasizing that it is an international drilling company with operations worldwide, contends that it qualifies as a corporation whose operations are "far flung" and to whom the first component of the total activity test (focusing on the corporate "nerve center") should apply. Plaintiffs counter by arguing that the majority of defendant's operations take place in Egypt and therefore Egypt should be considered its principal place of business under the second component of the total activity test.

Plaintiff's argument hinges on one subtle detail. While Santa Fe's operations are generally conducted by subsidiaries of the corporation, its operations in Egypt are not. (See Deposition of Seals McCarty, pps. 32–33). The 5th Circuit in *Nauru* held that the operations of a subsidiary should not be imputed to the parent for the purpose of determining the parent's principal place of business unless that subsidiary is an alter ego. *Nauru,* 138 F.3d at 164. Consequently, plaintiff asserts that the court should ignore the global operations of Santa Fe's subsidiaries in determining Santa Fe's principal place of business and focus solely on its operations in Egypt.

Several problems exist with plaintiff's position. For one, even if the court did find, based on a strict reading of *Nauru,* that the location of Santa Fe's subsidiaries cannot be factored into a determination of its principal place of business, then it would still have to explain the fact that Egypt is treated by the corporate headquarters in Dallas as only one of many places where Santa Fe's business takes place. In its report to shareholders, for example, Santa Fe openly states that its drilling operations can be found not simply in Egypt, but in South America, Southeast Asia, West Africa, North Africa, North America, the Middle East and the North Sea. (See Santa Fe International Report to Shareholders for Six Months Ended December 31, 1997, Plaintiff's Response to Defendant's Motion to Dismiss, Deposition Exhibit # 5, p. 8). Plaintiff's Deposition Exhibit # 4, a transition report filed with the SEC, shows, by reporting revenues and assets for each region, that the extent of operations in these regions is significant. (See *Id.* at Deposition Exhibit # 4, p. F–22).

Rather than support the contention that Santa Fe's primary place of business is Egypt, a strict reading of *Nauru* suggests that it is in fact Dallas. Like the corporation in question in *Nauru,* the activities of Santa Fe are, particularly if the activities of its subsidiaries are not imputed to it, primarily "management-oriented." *Nau-*

*ru,* 138 F.3d at 164. There, as here, in other words, the "bulk of the corporation's activities involve managing its affairs from its nerve center." *Id.* At 165. It is in Dallas, for example, that, as Santa Fe's SEC Transition Report states "a number of senior management personnel generally oversee, supervise and control the policies of the Company." (See Plaintiff's Response to Defendant's Motion to Dismiss, Deposition Exhibit # 4, p. 5). The majority of Santa Fe's corporate officers are headquartered in Dallas. (McCarty, Depo. p. 56). The Dallas office takes care of "management, contract negotiations, legal services, accounting services, payroll, insurance administration, treasury activities, engineering and technical support, safety and training" for Santa Fe International. (McCarty, Depo. p. 58). It also "sets policy, stipulates management practices, observes and makes sure those policies and guidelines are being administered properly, [and] followed properly." (McCarty, Depo. p. 59.).

Even if the locations of Santa Fe's subsidiaries are not imputed to determine its principal place of business, the actual activities of the corporation, as they exist in Dallas, indicate that Texas is in fact its principal place of business. The corporation's affairs, as outlined above, involve managing its various subsidiaries and affiliates around the world (including its operations in Egypt) that engage in drilling. In this sense, it is much like the corporation in *Nauru* which, although it also owned subsidiaries, was deemed by the 5th Circuit to be primarily engaged in the management of them as a principal operation of its business. Under such a reading, Dallas, and not Egypt, is in fact the principal place of business of Santa Fe. This comports with the 5th Circuit holding in *Nauru. Id.* at 164.

Finding that Dallas is Santa Fe's actual principal place of business is not the only option available to the court. A second alternative would be to hold that simply because *Nauru* rejects imputing the locations of subsidiaries to determine a corporation's principal place of business, does not mean that it forecloses the possibility of examining a corporation's total activities, subsidiaries and all, to determine whether or not it is far-flung. Indeed, this is what this court did in *Force v. E.I. Dupont De Nemours,* 770 F.Supp. 335 (E.D.Tex.1991). There, this court found that Texaco which "conducts its worldwide operations through hundreds of subsidiaries and affiliates located in 148 different countries," was a quintessentially "far-flung" corporation. *Force,* 770 F.Supp. at 336. Consequently, the nerve center test applied and Texaco's corporate headquarters was determined to be its principal place of business.

Rather than bolster the claim that Santa Fe's primary place of business is Egypt, Plaintiffs' evidence suggests that defendant is a quintessentially "far-flung" corporation, and, consequently, is considered a citizen wherever its "nerve center" exists. Not only is Egypt one of many places around the world where Santa Fe is engaged in drilling, but it is not the primary location of Santa Fe's drilling operations. Plaintiffs' exhibit # 3 shows, for example that just as many people are employed by Santa Fe in Britain (North Sea operations) as in Egypt. (See Plaintiff's Response to Defendant's Motion to Dismiss, Deposition Exhibit # 3). Out of the total number of people employed by Santa Fe (in 46 different locations around the world), only 26% seem to be employed in Egypt (1499 out of 5626).

In terms of assets, Egypt, once again, seems to be only one of several locations where Santa Fe actively conducts a significant portion of its business. Assets in the North Sea, for example, exceed those in Egypt by roughly 300%. (see Plaintiff's Deposition Exhibit # 4, p. F–22 which shows that, in December of 1997, Santa Fe had roughly 359 million dollars worth in assets in the North Sea, and only 137 million in North Africa). Defendant's assets in the Middle East and Azerbaijan roughly equal, if not exceed, its assets in

Egypt. (*id.* at F–22, showing that, in December of 1997, Defendant's assets in the Middle East totaled 153 million vs. only 137 million in North Africa). Only 10 to 20% of Santa Fe's total assets seem to be located in Egypt. (*id.* at F–22).

Not only are assets and employees probative of the extent to which Santa Fe's principal place of business is, in fact, not Egypt, but so too are the revenues that Santa Fe reports from different areas of the world. Santa Fe's primary source of revenue appears to be the North Sea, not Egypt. (See Plaintiff's Deposition Exhibit # 4, at F–22 showing that operating revenues for 1997 totaled roughly 197 million dollars in the North Sea, and only 108 million in North Africa). Revenues from the Middle East and Azerbaijan, of approximately 94 million dollars at the end of the 1997 fiscal year, are comparable to revenues from Egypt (108 million). (*id.* at F–22). Revenues from operations in other locations around the world, including South America, North America, Southeast Asia and West Africa, when added together, exceed revenues in Egypt as well.

In conclusion, no matter how *Nauru* is interpreted, plaintiffs' assertion that Egypt is Santa Fe International Corporation's principal place of business fails. Defendant's assertion that Dallas, Texas should be considered a principal place of business, on the contrary, succeeds. Consequently, there is no diversity and defendant's Motion to Dismiss is GRANTED.